RECEIVED
OCT 28 2008
ROBERT H. S...WELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

Christopher St. Julien

versus

Baker Hughes Oilfield
Operations, Inc., et al

Civil Action No. 07-1243

Judge Tucker L. Melançon

Magistrate Judge Methvin

## MEMORANDUM RULING

Before the Court is a Motion For Summary Judgment filed by defendant Baker/MO Services, Inc.'s ("Baker/MO") [Rec. Doc. 25], plaintiff, Christopher St. Julien's, opposition thereto [Rec. Doc. 27] and Baker/MO's reply [Rec. Doc. 30]. For the following reasons, the motion will be granted.

### I. Background

Plaintiff alleges he was injured on July 28, 2006 while he was employed by Quality Construction & Production, LLC ("QCP") on the W&T East Cameron 321B fixed platform, owned by W&T Offshore Inc. (W&T) and located on the Outer Continental Shelf offshore Louisiana. *R. 25, Declaration of Joe Ozment, Exh. A, No. 23*. At the time of the alleged accident, the W&T platform crew consisted of W&T lead operator and payroll employee, Shaun Guillory, and Baker/MO payroll employee/B-operator, Joe Ozment. *Id. at 9, 18*. Ozment was the only Baker/MO payroll employee aboard the platform and the individual plaintiff alleges caused his injury on July 28, 2006. *R. 1; Declaration of Ozment, Exh. A, No. 22*.

Prior to plaintiff's alleged injury, a snubbing operation had been completed which left the platform in a state requiring an additional amount of housekeeping. *Guillory, Exh. B, pp. 11-12, 18 and 108*. Commencing on July 20, 2006, QCP

supplemented the labor aboard the platform by providing several roustabouts, including plaintiff, as well as a crane operator. *Id. at p. 12; QCP time tickets, Exh. D in globo.* As of July 26, 2006, the crane operator had completed his work and left the platform and plaintiff and his roustabout crew remained for the duration of the housekeeping tasks or until W&T no longer required QCP's labor services. *Guillory deposition, Exh.. B, p. 24; time tickets, Exh. D; Plaintiff's deposition, Exh. E, pp. 61-62.*

With respect to his alleged accident, plaintiff claims that he was performing platform deck scrubbing duties on July 28, 2006, when he observed Ozment disconnecting a discharge hose from a portable pump. The pump had been used to discharge liquids from a tank on the second deck of the platform during cleanup, and the discharge hose exited from the pump to the top deck of the platform. *Exh.. "E," pp. 109-10.* Plaintiff observed that Ozment was having difficulty attempting to remove the discharge hose connection from the pump. As plaintiff walked toward Ozment, he was sprayed as the hose dislodged from the connection. *Id. at 112-13.* Plaintiff was not struck by the hose, but he was startled and allegedly fell backward as a result, causing his alleged injury. *Id. at 118-19.*

## II. Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(en banc). Initially, the party moving

for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *CelotExh. Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[1] *Id.* at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *CelotExh. Corp.*, 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144. 159 (1970);

---

[1] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the Exh.istence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *CelotExh. Corp.*, 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

3

*Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson*, 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir. 1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *CelotExh. Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III. Analysis

Baker/MO moves the Court for summary judgment on the basis that plaintiff, Christopher St. Julien, was a "co-employee" of Baker/MO payroll employee, Joe Ozment. Baker/ MO asserts that the undisputed material facts of this matter clearly demonstrate that plaintiff and Ozment both were borrowed employees of their borrowing employer, W&T and, as a matter of law, Baker/MO is immune from tort liability under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq.* ("LHWCA"). *Id.* Plaintiff argues that genuine issues of material fact exist as to whether or not plaintiff was W&T's borrowed employee. R. 27.

In support of their positions, the parties direct the Court to the nine factor test identified by the Fifth Circuit in *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312 (5th Cir.

1969), as a guide for determining borrowed employee status in the content of the Longshore and Harbor Workers' Compensation Act (LHWCA). To determine borrowed employee status, the following nine factors must be considered:

> (1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
>
> (2) Whose work is being performed?
>
> (3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
>
> (4) Did the employee acquiesce in the new work situation?
>
> (5) Did the original employer terminate his relationship with the employee?
>
> (6) Who furnished tools and place for performance?
>
> (7) Was the new employment over a considerable length of time?
>
> (8) Who had the right to discharge the employee?
>
> (9) Who had the obligation to pay the employee?

*Brown v. Union Oil Co. of California*, 984 F.2d 674, 676 (5th Cir. 1993)(citing *Ruiz*, 413 F.2d at 310). "No single factor, or combination of them is determinative" of borrowed employee status. *Id.* at 677. Therefore, the Court must analyze each of the *Ruiz* factors to determine if a genuine issue of material fact exists as to plaintiff's borrowed employee status.

*1. Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?*

Baker/MO asserts that W&T provided all direction to plaintiff as a member of QCP's roustabout crew and thus had control over plaintiff and his work as his

borrowed employer. *R. 25.* As stated in Baker/MO's memorandum, plaintiff confirmed in his deposition testimony that all supervision and instruction to him came from W&T through its lead operator and payroll employee, Guillory. *Plaintiff's deposition, Exh. E, pp. 67-68, 75-76, 83-86; 89-91.* The record indicates that Guillory confirmed W&T provided all direction to plaintiff and the QCP roustabout crew, including the QCP crane operator. *Guillory deposition, Exh. B, pp. 21-23, 19; 33-34.* In the 30(b)(6) deposition of QCP, Jody Broussard, QCP's representative, stated that there were no QCP supervisors on the platform and that plaintiff was told to report to W&T and perform all duties instructed by W&T. *Id. at 24, 27-32 and 123.* Broussard further stated that QCP did not know what specific tasks plaintiff was actually performing aboard the W&T platform at the time of the assignment. *Id. at 31-32.*

While plaintiff does not refute the foregoing, he argues that there are genuine issues of material fact as to whether or not he took orders from the QCP crane operator. *R. 27.* In essence, plaintiff bases his argument on the fact that the crane operator was on the job for the first three days of plaintiff's work assignment and that plaintiff referred to him as his "foreman." *Id., Exh. C, Plaintiff's deposition, p. 60; p. 66; 82; 84; 103.* Plaintiff, however, cites no evidence that he was ever instructed by QCP as to his duties on the W&T platform, and does not refute QCP's statement that it did not even know what plaintiff's duties were on the platform. Based on the record before it, the Court finds that QCP was not in control of plaintiff's work.

2. *Whose work is being performed?*

6

As stated above, QCP, plaintiff and Guillory acknowledge that plaintiff was performing W&T's work. *See e.g., Id. at 33; Guillory, Exh. B, pp. 23-24.* QCP did not know what that work was, thus it could not have been QCP's work being performed and QCP could not have controlled plaintiff's work of which it had no knowledge.

*3. Was there an agreement, understanding or meeting of the minds between the original and the borrowing employer?*

Plaintiff asserts that the QCP/W&T Master Service Contract provides at Sec. 2 that QCP employees are independent contractors, and therefore, plaintiff cannot be a borrowed employee of W&T. *Exh. C, pp. 23-24; Exh. F.* Baker/MO argues that this Court and the Fifth Circuit have held that, in determining borrowed employee status, the parties' actions in carrying out a contract can provide an implied modification or waiver of a contrary express provision. *Magnon v. Forest Oil Corp.*, 2007 WL 2736612 (W.D. La. Sept. 18, 2007) (Melançon, J.), at pp. 5-6 (citing *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1245 (5th Cir. 1988), and *Brown v. Union Oil Co. of California*, 984 F.2d 674, 677 (5th Cir. 1993). It is the reality of the worksite and the parties' actions in carrying out a contract which establish that the two employers had a contrary understanding or meeting of the minds. *Id.*

The record indicates that QCP told plaintiff to report to W&T and do everything instructed by W&T, and that plaintiff complied while at the platform. *Exh. C, pp. 24, 27-32; 123; Plaintiff's deposition, Exh. E, pp. 67-68, 75-76, 83-86; 89-91; Guillory deposition, Exh. B, pp. 21-23, 19; 33-34.* Also, the record confirms

that QCP had no supervisor for plaintiff on the W&T platform, and Guillory provided all instruction to plaintiff and the other QCP roustabouts. *Id.*

4. *Did the employee acquiesce in the new work situation?*

The focus of this factor is whether the employee was aware of his work conditions and chose to continue working in them. Plaintiff acknowledged in his May 9, 2008 deposition that he had no safety concerns with W&T and/or the platform operators; that he felt safe aboard the platform; that he considered all workers aboard the platform to be safe; and as a result, he had no objection to his work situation as a nominal employee of QCP turned over to W&T. *Plaintiff's deposition, Exh. E, pp. 76-77; 170-73.* It was both his expectation and his hope that he would return to the platform because he liked the personnel aboard the platform. *Id. at 175-76.*

Plaintiff argues that he was only working 4-5 days before he was injured and that he did not know for certain that he would be sent back to the platform once his first hitch was over. *Plaintiff's deposition, Exh. C., p. 64.* In *Capps v. N.L. Baroid-NL Industries*, 784 F.2d 615 (5th Cir. 1986), the Fifth Circuit provided guidance for application of this factor to a "loaned temporary employee" such as plaintiff. *Capps* involved a roustabout who was injured on the first day of a new assignment and had been sent to a different location and/or company on each day of his employment. The court nonetheless affirmed summary judgment on borrowed employee status. *Capps*, 784 F.2d at 615-19.

As the record demonstrates, plaintiff's testimony confirms he was aware of,

8

approved and was satisfied with his working environment aboard the W&T platform. It is undisputed that as an employee of QCP, a labor provider, plaintiff acquiesced to employment on a temporary basis. *See Lemaire v. Danos & Curole Marine Contractors Inc.*, 265 F.3d 1059, (5th Cir. 2001) (citing *Capps*, 784 F.2d at 617) (since the plaintiff worked for a company that loaned temporary employees, he knew the company would send him into new work situations. Thus, going into new work situations was plaintiff's work situation and he acquiesced to that fact.). Plaintiff, therefore, acquiesced to his work on the W&T platform.

*5. Did the original employer terminate his relationship with the employee?*

When considering this factor, the Fifth Circuit emphasizes the lending employer's relationship with the employee while the borrowing occurs. *Brown*, 984 F.2d at 678. This factor does not require a lending employer to sever completely its relationship with the employee, because such a requirement would effectively eliminate the "borrowed employee" doctrine. *Melancon*, 834 F.2d at 1246.

The record provides that W&T provided all instructions while QCP provided none, and that QCP did not know the work plaintiff was performing on W&T's platform. *Guillory deposition, Exh. B, pp. 21-23, 19; 33-34; QCP deposition, Exh. C, pp. 31-32.* Although QCP may not have relinquished its ability to re-assert control over plaintiff's performance, the testimony shows that at the time of the alleged accident QCP did not control plaintiff's work. This factor weighs in favor of borrowed employee status.

*6. Who Furnished Tools and Place for Performance*

Plaintiff does not dispute that W&T provided the location, tools and all equipment for the performance of plaintiff's work. *Id. at 36-37, 27; 45.*

*7. Was the new employment over a considerable length of time?*

The Fifth Circuit has noted that "[w]here the length of employment is considerable, this factor supports a finding that the employee is a borrowed employee; however, the converse is not true." *Capps,* 784 F.2d at 618; Lemaire, 265 F.3d at *7. In *Capps*, the plaintiff's injury occurred on the first day of his employment while in *Lemaire*, the plaintiff had been working for approximately three month when he was injured. In both cases, the Fifth Circuit concluded that this seventh factor was neutral. *Id.* Thus, although plaintiff was injured early into his employment, this factor is neutral.

*8. Who had the right to discharge the employee?*

The focus on this inquiry is whether the borrowing employer has the right to discharge the worker from its own services, and not whether it has any right to terminate the employee from his nominal employer's service. The record confirms, and plaintiff does not dispute, that W&T had the authority to discharge plaintiff from W&T's service, and to remove him from the platform and/or any W&T facility. *Plaintiff's deposition, Exh. E, pp. 68; 92; Guillory deposition, Exh. B, p. 47; QCP deposition, Exh. C, pp. 37-38.* This factor weighs in favor of finding borrowed employee status.

*9. Who had the obligation to pay the employee?*

The record confirms that while QCP paid plaintiff, he only reported his hours to QCP based upon the time he spent working for W&T. The time had to be verified and approved by a representative of W&T. QCP issued plaintiff's paycheck, but it billed W&T for plaintiff's time. *QCP deposition, Exh. C, pp. 38-42; Guillory deposition, Exh. B, p. 37-38.* "Where the nominal employer bills the borrowing employer for the services the borrowed employee provides, the obligation to pay requirement is met. The fact that the nominal employer keeps a percentage of the amount charged the borrowing employer is not relevant." *Hotard v. Devon Energy Corp., L.P.,* 2008 WL 2228922, 5 (W.D.La., 2008) (Melançon, J.) (citing *Melancon,* 834 F.2d at 1246). As the record establishes that W&T furnished the funds from which the plaintiff was paid, this factor supports a finding of borrowed employee status.

## IV. Conclusion

As has been demonstrated, integration of the undisputed facts with the nine *Ruiz* factors and legal authorities militates in favor of a finding of borrowed employee status for plaintiff, and therefore warrants summary judgment on this issue as a matter of law. Accordingly, as the Court finds that Christopher St. Julien was W&T's borrowed employee on the date of his alleged accident, Baker/MO's motion for summary judgment will be granted and plaintiff's tort claims against Baker/MO will be dismissed with prejudice.